L.E. Pauli Coffey

vs.

1:19-cv-3064 TWP-DLP

The state of South Carolina

---

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS and SEXUAL DISCRIMINATION

Comes now the petitioner, pro se, and states the following;

On June 17, 2015, in an act that shook South Carolina to its' core, Senator Clementa Pinkney and eight (8) of his parishioners were gunned down in church after bible study by a mad man named Dylann Roof who wished to show the world his hatred of all African Americans in his ultimate act of discrimination. Mr. Roof was apprehended, jailed and tried in South Carolina. Mr. Roof made the decision to act as his own counsel. Both the federal and state courts in South Carolina ensured that despite Mr. Roof's heinous act, and pro se status, his Constitutional and Civil Rights were upheld in both cases, even his death penalty case that lasted eighteen (18) months.

While it seems to the world that Senator Pinkney's death, and the death of his devout parishioners, were nothing more than senseless, it may be possible that their deaths can serve the purpose of re-establishing that all person, even female person, have Constitutional and Civil Rights even before they make it to court, any court, in America. Even in South Carolina courts.

1

CLAIM

Between September 21, 2016 and the date of this filing, the state of South Carolina has repeatedly, wantonly, willfully and illegally violate petitioner's Constitutional Rights by denying Petitioners' Due Process thirty (33) times in a manner which encompasses, but is not limited to, denying Petitioner equal access to the Court, denying Petitioner equal justice, denying Petitioner a speedy remedy, denying Petitioner a fair trial, denying Petitioner a jury trial upon demand on three (3) separate occasions, and extreme/ excessive penalty forced upon Petitioner and discrfimination against Petitioner for being a female..

As a direct result of the state of South Carolina violating Petitioner's Constitution Rights to Due Process under the 5th, 8th, 11th and 14th Amendments and by discriminating against Petitioner for being a woman, the state of South Carolina did cost Petitioner her home, one hundred a twelve thousand dollars ($112,000.00) in personal saving comprised in large part of her late husband's life insurance, one hundred and seventy five thousand dollars ($175,000.00) in sales proceeds from Petitioner's home, and more than ninety thousand dollars in lost income. The state of South Carolina stole three years from petitioner's life and damaged her irreparably.

Additionally, the state of South Carolina did cause Petitioner extreme mental duress by forcing Petitioner to understand that, in the state of South Carolina, she was not a person but an object who had no Constitutional or Civil Rights, regardless of which court she addressed in the state of South Carolina. The state of South Carolina did cause Petitioner extreme physical duress, as evidenced in lower court records, and, as of the date of this Petition, is still causing EXTREME physical and mental duress and EXTREME financial loss through its' violation of Petitioner's Constitutional and Civil Rights for the purpose of overturning the Dodd Frank Act as a matter of law.

.

## JURISDICTION

The federal courts have jurisdiction over the state of South Carolina because the state of South Carolina benefits from and enjoys federal monies including, but not limited to, federal financial aid for students attending Clemson Law School and federal financial funding for USDA, FHA and VA backed mortgages.

## VENUE

Petitioner is a natural person residing in Indianapolis, IN, who has universal residency. Further, through its' act denying Petitioner's Constitutional and Civil rights, and by selling Petitioner's home to the Secretary of the V.A. for five (5) dollars, the state of South Carolina did pick Indianapolis, IN, as the venue for Petitioners suit.

It is obvious that Petitioner cannot get a fair trial in ANY Court in South Carolina.

## PROCEDURAL HISTORY

1. On January 7, 2016, Chris A. Smock, a service connected disabled American veteran receiving benefit, passed away from complications from a botched and illegal procedure at the Charleston V.A hospital. Mr. Smock lived for approximately eighty one (81) HOURS after being released from medical care with a "clean bill of health" by V.A. doctors at the Charleston V.A. Hospital in Charleston, South Carolina. Mr. Smock's body was promptly lost by doctors at Beaufort Memorial Hospital for five (5) days after his death. At the time of his death, Mr. Smock and Petitioner were the legal joint tenants of their home in Beaufort, South Carolina which was not security for any mortgage. Upon the death of Chris A. Smock's, Petitioner did comply with South Carolina law and file a certified death certificate with the Recorder of Deeds office first on January 21, 2016 and again on January 29, 2016 and then through counsel on February 8th, 2016. As of January 21st, 2016, the public property tax record did reflect that Mr. Chris A. Smock was no longer a joint tenant of his wife' property. Probate was completed by one of the

top probate lawyers in the state of South Carolina, Jim Grimsley, in the manner prescribed by the state of South Carolina and Petitioner was the sole and exclusive owner of her home without debt.

2. On September 21, 2016, Gateway Mortgage Group LLC [Gateway], under the leadership of now Oklahoma Governor, Kevin Stitt, did illegally obtain a lien on Petitioner's home through professional courtesy and without legal cause. Petitioner was not notified by the state of South Carolina or [Gateway] or even the foreclosure attorney, Shawn M. French, who Petitioner had briefly retained, that her home had been illegally encumbered by Gateway Mortgage Group LLC until November 16, 2018, years after the event, in Bankruptcy Court, District of South Carolina case no. 18-05614-dd-Coffey.

3. On October 25, 2016, [Gateway] did illegally and wantonly file a Lis Pendens and separate complaint with the Master In Equity [MIE] Court in the 14th Judicial Circuit of South Carolina against Petitioner, ultimately resulting in a gender bending Judgment and Order overturning the Dodd Frank Act as a matter of law, rendered by [Gateway's] own counsel, illegally acting as adjudicator, in order for [Gateway] to steal Petitioner's home from her and to sell Petitioner's home to itself, [Gateway] before then selling that property to the Secretary of the V.A. for five (5) dollars (Please see Ex. A and B; Judgment and Order in South Carolina case(s) no. 2016-CP-07-02261 and 2016-LP-00637, 17 pages and Beaufort County Property history dated July 19, 2019, one (1) page)

    a.) Rubin Thayer Rivers Jr., attorney and agent for Gateway Mortgage Group LLC, was appointed by the state of South Carolina to the position of Special Referee to serve in Jasper County, South Carolina, and was then appointed to preside over Gateway v. Coffey in Beaufort County, South Carolina, by his co-counsel John Brian Kelchner ESQ of Hutchens Law firm of North Carolina, with the blessing of the state of South Carolina.

    b.) Rubin Thayer Rivers Jr. was previously a state of South Carolina state representative tasked with the duty of appointing the bench of the Appellate Court of the state of South Carolina.

4.  On October 26, 2016, Gateway Mortgage Group LLC served Notice of Foreclosure and Notice of Suit on Petitioner in Indiana for a mortgage not in her name and not legally secured by her home. .

5.  On October 28, 2016, Petitioner filed her initial response to [Gateway's] illegal Notice of Foreclosure/ Lis Pendens in the [MIE] Court showing that she did not have a mortgage and was not subject to the jurisdiction of the [MIE] Court and that her home did not secure a mortgage. Petitioner's Notice was ignored by [MIE] master, Judge Marvin Dukes III.

   a.) The [MIE] Court in the state of South Carolina is a court of deficiency. The [MIE] court has jurisdiction over only those who are deficient in borrowing and equity. Petitioner did never have a loan and could not be deficient in borrowing.

6,  On January 6, 2017, in response to [Gateway's] Motion for Summary Judgment, Petitioner properly filed an Affirmative Defense Response [ADR] in the Clerk's Office of the 14th Judicial Circuit of South Carolina. After stamping three copies of Petitioner's [ADR], one copy for Petitioner, one copy for the court and one copy for [Gateway], the clerk's office of the 14th Judicial Circuit threw away Petitioner's [ADR] filing, thereby preventing it from being uploaded onto the state of South Carolina's Case Management System [CMS] and providing [MIE] judge, Marvin Dukes, with cause to declare the he would not hear or rule on Petitioner's [ADR] in court, despite Petitioner having her stamped copy with her at hearing and despite [Gateway] having a stamped copy at hearing in Court.

   a.) The state of South Carolina, at the time of these events, did not allow Pro Se petitioners to electronically file on the [CMS]. The state gives attorneys twenty four (24) hour a day, seven (7) day a week access to the court. Pro se filers may only access the Court during the hours that the Court is physically open which, many times, is not even forty (40) hours in a week.

   b,) The state of South Carolina denies equal access to the courts.

5

7.  Petitioner did attempt to file Bankruptcy, case no. 17-00313-dd in her late husband's name in order to escape the Lis Pendens that was illegally and wantonly filed against her.

8.  On January 30, 2017, after declaring in hearing on January 11, 2017, that Petitioner's husband's death was a windfall and after refusing to hear Petitioner's [ADR], 14th Judicial Circuit [MIE] judge Marvin Dukes III ruled in favor of [Gateway's] Motion for Summary Judgment, ignoring Petitioner's [ADR] completely.

9.  Petitioner was denied her bankruptcy action in 2017 because bankruptcy cannot be filed in the name of a deceased person, it can only be continued if death occurred during the process of bankruptcy. On the day that the bankruptcy court denied Petitioner's bankruptcy petition, and at the urging of the Bankruptcy court, Petitioner did retain counsel, Shawn M. French of Mt. Pleasant, South Carolina, who identified himself as a Foreclosure Specialist. On or about February 1, 2017, Shawn M. French did electronically file two Motions to Vacate with the [MIE] Court at the cost to Petitioner of twenty six hundred dollars ($2600.00). (Please see attached. Ex C, five pages)

    a.) On January 30th, 2017, unaware that Shawn French was intending to filing anything with the Court, Petitioner did file a Motion to Reconsider Judgment with the [MIE] court.

10.  On January 31, 2017, the matter of Gateway v. Coffey was referred to the [MIE] court as per the official court record despite the fact that the [MIE] court had already exercised jurisdiction through its' ruling on January 30th, 2019. (Please see attached ex. D; Beaufort County Public Index, page seven (7) of eight (8) pages)

    a.) There are not words in the English language sufficient to describe the unprofessionalism and total disregard for the law that is found in the Courts of South Carolina.

    b.) There are not words sufficient in the English language to describe the discrimination against women that is considered totally acceptable not only in the courts of the state of South Carolina but also by the state of South Carolina, generally.

        c.)      Obscene is not a sufficient word.

11.      On April 4, 2017, Petitioner did attempt to terminate the representation of Shawn M. French for his obvious inability to cite South Carolina foreclosure law or real estate law in his filings and because he did willfully abandon Petitioner as counsel. Petitioner's Notice of termination to the 14th Judicial Circuit was ignored for seven (7) months during which time Petitioner was notified in writing by staff of the Beaufort County Clerk's office that Petitioner only had Constitutional and Civil Rights if they were bestowed upon her by a judge and that "she should not just expect to have Constitutional Rights or Civil Rights".

        a.)      Beaufort is a county within the 14th Judicial Circuit which includes, but is not limited to, the cities of Beaufort, Hilton Head, Hilton Head Island [HHI], Harbor Town, Fripp Island, Ladys Island, St Helena Island, Coffin Point, Lands End and Bluffton, all in the state of South Carolina

12.      On August 1, 2017, Judge Marvin Dukes III did vacate the entire [MIE] court from the matter(s) of Gateway v. Coffey due to undisclosed conflict.

13.      On or about August 17, 2017, [Gateway] through its' counsel, John Brian Kelchner ESQ of Hutchens Law firm, one of eight (8) attorneys dispatched by Oklahoma Gov. Stitt and [Gateway] to take Petitioner's home from her, was allowed to appoint its' own co-counsel, Rubin Thayer Rivers Jr, as the new adjudicator, or Special Referee, to preside over Gateway v. Coffey, with the blessing of South Carolina.. (Please see Ex. E; 5 pgs)

        a.)      In defiance of the laws of the state of South Carolina, Petitioner was not consulted with and did not condone this action. Gateway v. Coffey, 2016-CP-07-02261, citing generally.

        b.)      Rubin Thayer Rivers Jr. did never reveal to Petitioner at any time that he was co-counsel with John Brian Kelchner ESQ in representing Gateway Mortgage Group LLC.

c.) Rubin Thayer Rivers Jr. did not reveal to Petitioner that he had been a state representative for the state of South Carolina and in his capacity as state representative his duties included, in part, appointing the bench of the Appellate Court of the state of South Carolina.

d.) John Brian Kelchner ESQ of Hutchens Law Firm also refused to reveal Rubin Thayer Rivers Jr was his co-counsel in representing [Gateway] and its' agents, and a person involved with the appointment of the bench of the Appellate Court of the state of South Carolina.

14. On August 22, 2017, Petitioner did file a Motion to strike referral to a Special Referee citing state code which prohibited the appointment and reference and did make her initial Jury Demand. Petitioner's Motion to Strike and her Jury Demand were both denied by the court and by the 14th Judicial Circuit.

a.) The 14th Judicial circuit and most of South Carolina believe they are immune to the U.S. Constitution and all of its' Amendments unless it serves the state.

b.) Women have exactly two (2) rights in the state of South Carolina.

1.) The Right to remain silent.

2.) The Right to do as they are told.

15. On August 23th, 2017, Petitioner did file a second request for a Jury Trial which was also denied by the Court and by the 14th Judicial Circuit.

16. On August 25, 2017, Petitioner made her third demand for a Jury Trial which was again denied by the court and again denied by the 14th Judicial Circuit.

a.) The case of [Gateway] v. Coffey had been removed from the [MIE] court and was, therefore, subject to a jury trial upon request.

17. On Sept 11, 2017, [Gateway] filed its' second Motion for Summary Judgment to its' counsel, Rubin Thayer Rivers Jr. as adjudicator.

a.) Petitioner is not an attorney but she can only assume that the easiest way to win a case is to appoint your co-counsel as the judge.

8

18. On Sept 18, 2017, Petitioner filed her [ADR] response to [Gateway's] second Motion for Summary Judgment which was also ignored by the court and the 14th judicial circuit.

    a.) On October 15, 2017, Petitioner filed her tenth (10th) Demand for Due Process reference the [ADR] she filed on January 6th, 2017, in Response to [Gateway's] first Motion for Summary Judgment, to be found and uploaded to the [CMS].

    b.) Petitioner finally had to provide a second copy of her first [ADR] to the Court in order to have it uploaded on or about October 30, 2017.

19. On October 17th, 2017, despite Petitioner's legal protests against the hearing as a matter of law, Petitioner was forced to participate in a hearing presided over by [Gateway's] counsel, Rubin Thayer Rivers Jr.

    a.) Record of this hearing does not exist in the records of the 14th Judicial Circuit or the Beaufort County Public Index. (Please see attached ex D; Beaufort County Public Index dated June 6, 2019, eight (8) pages.)

    b.) The Appellate Court of the state of South Carolina, appointed in part by [Gateway] co-counsel, Rubin Thayer Rivers Jr., demanded a transcript of this hearing which does not appear in the Court's official record.

    c.) The Appellate Court of the state of South Carolina dismissed Petitioner's Appeal of Judgment and Order based solely on the absence of the transcript, not required when Petitioner filed her Appeal, from a hearing illegally presided over by [Gateway] co-counsel Rubin Thayer Rivers Jr., a hearing which does not appear in the official court record.

        1.) <u>The Appellate Court of the State of South Carolina refused to restore the Dodd Frank Act as a matter of law.</u>

    d.) Many times during the nearly three year nightmare brought upon Petitioner by South Carolina, Gov. Kevin Stitt, [Gateway] and it's eight (8) attorneys, Petitioner could not help but notice the distinct and overwhelming similarities between the South Carolina court(s) and the 1970 television sit-com, SOAP.

    e.) These people are just nuts.

20. On November 7th, 2017, Petitioner did file suit against [Gateway] in federal district court, District of South Carolina at Charleston for violation of FCRA, case no. 9:17-cv-03021-DCN-MGB, as Petitioner had been contacted by dozens of unscrupulous vendors who obtained her private information from the Beaufort County Public Index, a consumer reporting tool, as a direct result of the illegal foreclosure filed against Petitioner for a Mortgage not in her name and not legally secured by her home, looking to "help" petitioner "fix" her foreclosure problem. Beaufort County, South Carolina, through its' Lis Pendens lists, generates income for the County ad the state.

21. Petitioner was sent to the U.S. Attorney's office in Charleston, SC, by the staff of the District court, reference the nightmare Petitioner was being forced to endure in Beaufort, SC. The U.S. A.G.'s office allowed Petitioner to go through security and then went out of its' way to make sure Petitioner understood that citizens could not report crimes to the U.S.A.G. and then sent Petitioner on her way.

22. On that same day, staff of the District court provided petitioner with the phone number for the FBI in Charleston, so she could report the nightmare in Beaufort, SC. Upon reaching the FBI in Charleston, SC, Petitioner was transferred to the FBI office in Beaufort County, SC. Upon reaching the Beaufort County, SC office of the FBI, an appointment to meet with an FBI agent was scheduled so Petitioner could report the rampant crime in she was experiencing in the South Carolina courts.

23. On the night before Petitioner was scheduled to meet with the FBI, she received a call from Congressman Mark Sanford's office in Beaufort, SC, at 5:20pm, after the office was closed for the day, so Petitioner could be reminded that her application for disability was hanging in the balance if she had her meeting. This call was contemporaneously chronicled by Petitioner who emailed her family about the call.

24. Petitioner met with an agent from the FBI the next day, and he was not moved by the corruption and discrimination Petitioner was experiencing in Beaufort. The FBI did nothing to address or stop the corruption in the Courts of the state of South Carolina.

    a.) Petitioner can only assume that FBI agents do not have mortgages nor are they related to or know anyone with a mortgage. Petitioner can further assume that the FBI does not believe that women have Constitutional of Civil Rights.

25. The state attorney general's office gave Petitioner notice that it did not receive or hear complaints from citizens and that it only served the state's politicians.

26. On April 26, 2018, Petitioner made her fifth (5th) trip into the Beaufort County Sheriff's Office trying to file a criminal report on Barrity, Corrupt Influence and Judicial Case Fixing. On this fifth (5th) attempt, Petitioner was NOT turned away by the "house mouse", the deputy assigned to handle walk-in complaints at the BCSO on any given day. Instead, the "house mouse" spoke with Petitioner and agreed to take a report of her complaint. This complaint took fifty four (54) minutes and thirty six (36) seconds to report and should have been more than ten (10) pages long in BCSO format.

27. On May 1st, 2018, Michael Hatfield of the Beaufort County Sheriff's Office released a falsified, single page report comprised of a handful of sentences clearly designed to make Petitioner look like she was as crazy as the Courts of South Carolina.

    a.) Petitioner did digitally record her report to BCSO as she was giving her report.

    b.) Obviously falsifying reports is a part of the daily routine at Beaufort County Sheriff's Office [BCSO].

28. Petitioner contacted SLED, and they refused take a report of the crime in Beaufort County, South Carolina, courts.

29. Petitioner spoke with Governor Henry Mc Masters, personally, on his campaign bus when he made his trip through Beaufort, South Carolina in May 2018, and he simply shrugged when presented with the crimes in the courts of South Carolina.

30. On July 12, 2018, Petitioner did notify the state of South Carolina of her intent to file suit against the state of South Carolina for Constitutional and Civil rights violations stemming from the matter of Gateway v. Coffey via USPS and Fax. The state of South Carolina chose not to stop the violations or crime in the matter of Gateway v. Coffey. Civil Rights violations are a crime in the state of South Carolina as per SC State Code.

31. On August 16, 2018, Petitioner did put the state of South Carolina on Notice a second time that it was her intention to sue the state of South Carolina for Constitutional and Civil rights violations stemming from Gateway v. Coffey. Again the state chose not to stop the violations or crime in the matter of Gateway v. Coffey.

32. On August 16, 2018, Rubin Thayer Rivers Jr. did admit that he is John Brian Kelchner's co-counsel, in an independent definitive statement in email from his professional email aggress that was properly provided to the court(s).

    a.) At no time before or after his independent definitive statement did Rubin Thayer Rivers Jr move to recuse himself from the matter of Gateway v. Coffey nor did the state remove R. Thayer Rivers Jr. from Gateway v. Coffey.

33. On Sept 18, 2018, Rubin Thayer Rivers Jr. did render his gender bending Order and Judgment, overturning the Dodd Frank Act and allowing his client, Gateway Mortgage Group LLC to write a mortgage and apply Petitioner's name and her home to that defective mortgage instrument, in defiance of federal and South Carolina law to include, but not limited to, the South Carolina Bar's Real Estate Essential manual, issued by the state of South Carolina on June 2018, and ordered Petitioner's home sold in eleven days. Rubin Thayer Rivers Jr.'s Order and Judgment violated the Constitution of the state of South Carolina AND the Constitution of the United States of America. Rubin

Thayer Rivers Jr.'s Order and Judgment discriminated against Petitioner because she was an unescorted female in South Carolina, above all else.

34. Petitioner filed notice of her intent to file an Appeal on Sept 21, 2018, in a misguided attempt to save her home from sale. John Brian Kelchner ESQ of the Hutchens Law Firm did put Petitioner on Notice that in order to save her home from sale during an Appeal, she must, as the appellant, first post bond equaling four times the appraised value of Petitioner's home, in order to stop any sale of her home which is beyond excessive. Even a bankruptcy petition did fail to save Petitioner's home from sale because Petitioner could not come up with bond in the amount of seven hundred thousand dollars ($700,000.00) in response to a fake Foreclosure action valued at one hundred six thousand dollars ($106,000.00), certainly not after Petitioner spent one hundred and twelve thousand dollars ($112,000.00) trying to fight to save her home from the crime, corruption and discrimination of South Carolina for more than two years.

35. Upon filing her appeal with the Appellate Court of the state of South Carolina, no member of the bench revealed that Rubin Thayer Rivers Jr. had been responsible for appointing the bench of the Appellate Court of South Carolina. Instead, the Appellate Court dismissed Petitioner's appeal for failure to provide a transcript for a hearing that does not appear anywhere in the Court records for the state of South Carolina.

    a.) Petitioner was not even a resident of South Carolina at the time she became a widow.

    b.) Petitioner did not realize Bloodline Law still existed in America but it does in South Carolina.

    c.) Petitioner did not realize that the lead attorney retained by Gov. Kevin Stitt, a Mr. Paul H. Hoefer, was the son of the Chief Justice of the Supreme Court of the state of South Carolina.

    d.) Petitioner is "good" but even she's not "good enough" to escape the gravitational pull of an entire state judicial system that is founded in and built on bloodline law, corruption and grotesque sexual discrimination.

36. On or about March 4, 2019, Petitioner's home was sold in foreclosure sale by Gateway Mortgage Group LLC to Gateway Mortgage Group LLC through Rubin Thayer Rivers Jr,, attorney for Gateway Mortgage Group LLC, on the "steps of the Beaufort County Government Center. It was actually sold in the hallway outside of the Beaufort County court designated for foreclosure sale. Petitioner packed everything she could in her pick up truck and left South Carolina on March 4th, 2019.

37. On or about April 5, 2019, Petitioner's home was AGAIN sold by Gateway Mortgage Group LLC to Gateway Mortgage Group LLC through its' attorney, Rubin Thayer Rivers Jr. on the steps of the Beaufort County Government Center" a.k.a. the hallway outside the Beaufort County court designated for foreclosure sales and then sold to the Secretary of the V.A. for five (5) dollars.

38. Petitioner lost ninety percent of her possessions to include, but not limited to, her late husband's collector motorcycle and his car as well as all of her cookware and even her bed and precious family heirlooms handed down to Petitioner by her great grandmother. These things are just gone.
    a.) There would be no point in filing a report for a lost or stolen motorcycle or other possessions as the Beaufort County Sheriff's Office would just falsify the report, anyway.

39. As per South Carolina record, Gateway Mortgage Group LLC did sell Petitioner's home to the Secretary of Veterans Affairs for five dollars AND Chris Smock NEVER owned a home at 1707 Palmetto Dr, Beaufort South Carolina. (Please see attached Ex. B; Beaufort County Property record dated July 19, 2019, updated July 12, 2019.)
    a.) There is only one kind of law in South Carolina, Bloodline law.
    b.) Unescorted women do not have Rights in South Carolina by the design of South Carolina.

40. Dylann Roof slaughtered nine (9) innocent people in a church in Charleston, South Carolina as his ultimate act of discrimination. He acted as his own counsel and was afford each and every one of his Constitutional rights and Civil rights in South Carolina courts in a Death Penalty case that lasted on eighteen (18) months.

41. Omar Mateen was allowed to walk freely through the streets and among the people of Orlando, Florida, because no one wanted to violate his Constitutional Rights.

42. Esteban Santiago was given back his guns after he deemed himself a threat because no one wanted to violate his Constitutional rights by depriving him of the very guns he then used to turn the Miami Airport into a death chamber.

43. Dzohar Tsarnaev was guaranteed his Constitutional and Civil Rights in court.

44. Petitioner was denied thirty three (33) demands for Due Process, three (3) Demands for Jury trial and discriminated against for being an unescorted female over a 30 month period that stripped her of her home, her wealth and her sense of security, her trust in our legal system and stripped her of her future because she is neither a mass murderer nor a male.

## SYNOPSIS

45. No Individual, Entity, Department or Agency can instruct or force the state of South Carolina to deny anyone, including Petitioner, his or her Constitutional or Civil rights. The state of South Carolina did so of its' own volition and causing irreparable harm to Petitioner by denying her the Constitutional rights guaranteed to her by the Constitution of the state of South Carolina and the Constitution of the United States and all of the Amendments to our US Constitution. It further harmed Petitioner by discriminating against her because she is an unescorted female, a widow.

46. Petitioner seeks punitive compensation for the irreparable harm caused to her by the state of South Carolina during the period spanning four (4) calendar years, sufficient enough to ensure that the state of South Carolina can show that it understands Constitutional Rights, Civil Rights, that woman have Equal Rights and so that it never allows this to happen to anyone in its' courts, again.

Wherefore, because Petitioner knows rational people recognize that the state of South Carolina is guilty of Constitutional and Civil Rights violations and because, as of the date of this filing, Petitioner has less than $113.00 in the bank and is halfing her medications as a direct result of the actions of the state of South Carolina, Petitioner prays this court will find for Petitioner and order the state of South Carolina to pay all relief just and proper given its' unconscionable acts against Petitioner. No matter how many times Petitioner gave Notice to the state of South Carolina, it did not care to hear that America is now a free country where all people are supposed to have equal Rights.

*Submitted under penalty of perjury*

Respectfully,

L.E. Pauli Coffey
3493 Birchwood Ave
Indianapolis, IN
46205

Distributed via USPS to:

Alan Wilson
Rembert Dennis Bldg
1000 Assembly St Room #519
Columbia, SC
29211

16